# VIK PAWAR LAW, PLLC

### ATTORNEYS AT LAW

20 VESEY STREET SUITE 1410
NEW YORK NEW YORK 10007

TEL (212) 571 0805
FAX (212) 571 0938
www.pawarlaw.com

**Robert Blossner**

**Vik Pawar**

`November 13, 2023

**Request to be Filed Under Seal**

Honorable Valerie E. Caproni
United States District Judge, S.D.N.Y.
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007
By ECF

Re:     United States v. Tomas Colon
        52 18 CR 526-007 (VEC)

Dear Judge Caproni:

   This letter is respectfully being submitted by Robert Blossner, Esq. and Paul Lieber, Esq. on behalf of their client, defendant Tomas Colon in an effort to set out favorable arguments in mitigation of his sentencing. The sentencing is currently scheduled for November 29, 2023, at 10:30 A.M. It is further requested that this letter be sealed as it mentions Mr. Colon's voluntary proffer and debriefing by the government and the results thereof as will be discussed.

# PROCEDURAL HISTORY

   The Court and counsel have received the Probation Department's sentencing report and recommendation. I write separately to highlight certain factors that I request the Court to consider in fashioning a sentence as to Mr. Colon that would be below that suggested by the Guidelines. It is firmly believed that the factors contained herein would suggest the appropriateness of a sentence of the minimum permitted under the statute, sixty months.

# OBJECTIONS TO PRESENTENCE REPORT

   I have reviewed the revised presentence report dated October 25, 2023 with my client and we have no objection to the guideline's calculation therein or its content other than we object to the **Judicial Sentencing Information (JSIN)** which has been submitted. My objection is specifically to the make-up of the cases which are being offered to the Court as a standard. It is submitted that aside from the amount and type of narcotics in those cases offered by **JSIN,** this

1

Court would be unaware of the other factors such as violence, criminal history, and obstruction that were taken into consideration by the sentencing Judges in those cases. A fairer and more rational approach for comparison purposes when analyzing what Mr. Colon's sentence should be, would be to utilize the sentences of the five (5) coconspirators in this very case who have already been sentenced. Those sentences and the Court's reasoning are readily available and would more accurately offer a standard for the Court to judge Mr. Colon's relative conduct by. Under the circumstances, and pursuant to 18 U.S.C. Section 3553 (a)(6), comparison to the sentences of his codefendants would avoid actual disparity. My reasons for this objection are discussed below in the section of this letter which concerns the problem of Disparity.

# BACKGROUND

The defendant in this case is 48 years old and the father of 5 children all of whom he has financially supported and continues to maintain close paternal ties with.

As stated above, on August 4, 2023, Mr. Colon pled guilty to Count One of a Superseding Indictment charging him with conspiring to distribute and possess with intent to distribute in violation of 21 U.S.C. §§ 841(b)(1)(A).

When, on November 29, 2023, Mr. Colon is sentenced, he will have been in custody for 18 months since his arrest in the Dominican Republican on May 27, 2022. Upon Mr. Colon's being detained and held for extradition proceedings to the United States, he waived his rights to contest, and consented to his being extradited. Upon his arrival in the Southern District, he once again waived his rights, this time consenting to be debriefed by the United States Attorney and agents of the DEA. It was apparent to me from the moment that I interviewed Tomas Colon that he was completely crushed by the tragedy that his activities had brought upon not so much himself, but to his family. He was being charged with a conspiracy to distribute narcotics in the New York City Metropolitan Area, and he had already decided that he was going to plead guilty, and wanted to minimize his exposure so as to be able to return to his family as soon as possible. It now appears that Mr. Colon and all of his co-defendants have pled guilty to having engaged in this illegal drug sales business. They have each admitted to having bought and sold whatever illegal narcotics they could obtain. Cocaine, Heroin, and other illicit substances. The coconspirators had been childhood friends and their circle of customers and sources were in the main former friends and business associates.

As stated above, Mr. Colon agreed to, and did undergo a debriefing by the United States Attorney and the agents assigned to this case. To his credit, Mr. Colon's being debriefed was not at my or my predecessor counsel's suggestion, but at the request of Mr. Colon himself. Very early on in the prosecution of the matter, the assigned Assistant United States Attorney was contacted and arrangements were made wherein Mr. Colon permitted himself to be debriefed. His desire was abundantly clear, he did not wish to contest his participation in the crimes he was charged with, but he did want in any manner possible short of active cooperation to minimize what his sentence would be. He has tried to accomplish that by offering what he could without engendering the danger associated with active cooperation. He waived his rights and consented to being debriefed. Being debriefed may not sound like a giant step, but it is. For a defendant involved with others in criminal enterprise, it opens him up to the suspicion of others within and

2

without the group he was associated with, and is thus fraught with danger. At the same time, it was a step towards Tomas Colon trying to make amends to society.

It is my understanding that even before he requested counsel to contact the assigned AUSA, he had made similar overtures to law enforcement officers when he was taken to custody in the Dominican Republic. It is also my understanding from conversations with the government's attorney that while Mr. Colon did not supply what amounted to substantial assistance, and cannot be given credit as such, he was at the very least found to be forthright and honest in his efforts. He evidently did not possess information that the Government didn't either already have or was not of value for further prosecutions on American soil. It should be noted that the fact that what he told the Government was verified by what they already knew, established his veracity at the proffer session.

When Mr. Colon pled guilty he accepted the role that he played in this crime. Additionally, in a letter written to this court, Mr. Colon has admitted that he not only acted inappropriately, but that he has no one to blame but himself for his actions. In his letter, which is attached hereto as Exhibit "1", Mr. Colon states and has maintained since his arrest, that he did everything he was accused of, but was not the owner or the proprietor of the conspiracy. Mr. Colon readily admits to his personal guilt and that he exercised managerial responsibilities in the conspiracy that he pled guilty to. However, he maintains that he was not an owner in the classical sense of the term. Mr. Colon has so stated since the day of his arrest in the Dominican Republic. This does not in any manner negate responsibility. He readily admits to activity which more than amounts to managerial responsibility. In his letter to the Court, as well as in his earlier debriefing he described his activity as including his giving coconspirators directions and making efforts to coordinate their joint efforts, which more than satisfies the guideline calculations. However, he maintains that he was not the owner in that it was a group effort in which he and his coconspirators shared in the day to day operations and proceeds.

According to what Mr. Colon relates to the Court, he and his co-conspirators had been friends since their early childhood and that they conducted this conspiracy as a joint venture and shared equally in the proceeds. It is respectfully suggested that Mr. Colon's assertion is borne out by a careful reading of the telephone conversations intercepted by the Government including those which have been presented to the Court in the PSR. Those conversations establish with certainty that this was not a case in which Mr. Colon alone acquired the narcotics and presented them to subordinates for distribution. The conspiracy was, in actuality, a fluid operation in which the members (co-defendants) alternated in their various efforts and roles. Each of them would from time to time be the one who was able to obtain and acquire narcotics from various sources which were available to that particular participant. Each also took part in storing, distributing and collecting the proceeds from the sale of the drugs. The intercepted conversations confirm that as a group, they not only exchanged roles, but often passed the narcotics around from one to another so that it was available for distribution by whichever participant had a customer at that point in time.

Amongst the duties that Mr. Colon admits to, were that he directed who his co-conspirators should sell to, and for how much. The up and back banter in the literally hundreds of intercepted conversations included those cited in the PSR indicates beyond cavil that this was a collaborative effort. Those combined efforts being the factual basis for his and their guilt, it is

3

suggested to the Court that Mr. Colon should not be treated very differently than his co-conspirators already have been. There should not be any great disparity in their sentences.

From the very first moments of his proffer, Mr. Colon proved himself to be credible. There was none of the usual mitigation that ordinarily occurs during initial proffer sessions. It was by Mr. Colon's earnest efforts in the course of that debriefing session that he hoped would reduce his exposure to punishment and would set him off on his personal road to redemption.

I trust that Mr. Hobson, the Assistant United States Attorney has and will share with the Court that which he feels is necessary and proper to impart the facts under the circumstances. What I do ask is that because of all the facts that the Government will be relating, the Court find that Tomas Colon has attempted as best he could to redeem himself. He has not provided substantial assistance as is necessary for intervention by the Government on his behalf, but he has by his proffer and plea initiated the process that at the very least will ensure that he will not be reentering the narcotics business whenever he is released from incarceration. Had Mr. Colon not had a managerial role as he has accepted responsibility for, his debriefing would have earned him "Safety Valve" credit. (18 U.S.C. 3553 (f) * It is due to his role in the conspiracy that such relief is not available. He was, however, debriefed, and it is suggested that Mr. Colon has by his consent and veracity, earned a sentence somewhat less than what is suggested by the Guidelines. I make this request not only on behalf of Mr. Colon, but also on behalf of his common law wife Maria, their infant daughter, his mother, and all of his other children and family who have and will continue to suffer due to the separation caused by his misdeeds.

As can clearly be determined from the minutes of his plea, Mr. Colon accepted the responsibility for his acts and the role that he played in the crimes he was accused of. Additionally, in a letter he has written to this Court, (Appended hereto as Exhibit "1") Mr. Colon not only admits that he acted inappropriately, he makes clear that he does not blame anyone but himself for his actions. As Mr. Colon states in his letter:

> "Because of my actions, I am about to face the possibility of going
> to jail for a long, long time. I understand that I have no one to
> blame for this but myself. I pleaded guilty because I am guilty. I
> participated in those sales and acted against everything I was
> taught not to do. I know that what I have done has harmed many
> people. I and 1 alone know and am aware that 1 am fully
> responsible for my actions. I cannot even begin to describe the
> guilt and shame I feel."

(Ex. 1: Letter of Tomas Colon).

Who was Tomas Colon prior to his epiphany and his efforts at redemption by allowing himself to be debriefed, and pleading guilty? Born in the Dominican Republic he was brought to the United States by his father when he was 17 years of age where he lived in New Jersey with

---

*The other factors necessary for Safety Valve consideration under section 3553 (f) are present. There was no violence associated with this long term conspiracy and Mr. Colon has only One (1) Criminal History point which involved 15 grams of cocaine in 2004.

his parents. His work ethic was inspired by his father who was employed as a laborer in New York at the same door manufacturing factory for over 30 years. His father is now retired and has moved with Tomas's mother back to the Dominican Republic where they live. Mr. Colon worked in a series of low paying positions for most of his youth and young adulthood until 2004 when at age 29, he was arrested and convicted of a narcotics offense that involved 15 grams of cocaine. He was sentenced for that offense to a period of probation. He was successfully carrying out the terms of probation until 2007, when he was deported due to that 2004 conviction of a narcotics offense. He unlawfully returned to the United States and once again found continuous employment in various capacities (mostly factory or retail positions) until he returned to the Dominican Republic in 2017. While living in the United States he had several relationships, and fathered four children whom he has always supported financially as well as emotionally. To this date, Mr. Colon has maintained a close relationship with all of his children as can be inferred by the letters to the Court, not only from his children, but from their mothers.

Upon Mr. Colon's return to the Dominican Republic, he resumed a relationship with Maria Crespo Fernandez, and was living with her at the time of his arrest in 2022. After returning to the Dominican Republic Mr. Colon established and operated an animal medical supply business which he and Ms. Crespo both worked at. Ms. Crespo has been operating the business in his absence and has been deriving approximately $550 -700 US a month from the store.

Suffice it to say, aside from Mr. Colon's fall from grace by participating in the instant narcotics conspiracy, he was evidently the best father he could be . Mr. Colon terribly regrets the position he has put Maria Crespo                in by his illegal activity and his prospectively being incarcerated for an extended period.

As the photographic exhibits accompanying this submission will reveal and as will hopefully be corroborated by the DEA agents who took part in Mr. Colon's arrest at his home, Mr. Colon and his family did not live "THE HIGH LIFE" in the Dominican Republic. They in fact lived somewhat humbly. There were none of the usual accoutrements of luxury that one would expect that a trafficker or "DYNAMIC CZAAR OF THE UNDERWORLD" would have acquired such as jewelry, fancy cars, and cash.

As Maria Crespo Fernandez' letter to the Court (attached hereto as Exhibit "2" ) will attest, upon his arrest, Mr. Colon promised her and he did waive extradition so that he could if possible, return to his family as soon as possible. The importance of waiving extradition should not escape the Court in its calculation of the defendant's sentence. As can be verified by the Government, if contested, extradition proceedings from Latin America can and often do take years. During the pendency of those proceedings and appeals, prisoners who contest their extradition can live quite comfortably, including being permitted the company of their family even if they are incarcerated.

Therein lies not only the genesis, but the end results of Tomas Colon's criminality.

5

He more than recognizes now that he took foolish and thoughtless steps into a world that led, not only to his current and prospective incarceration but worse, the loss of whatever aid and comfort, he could ever provide          and her mother, Maria Crespo Fernandez. While not excusable, he does recognize now that it was his own doing that led from being an enviable family man with a mission to ease the discomfort of his daughter and help prop up Ms. Crespo, to having he status of a federal narcotics conviction. The only light at the end of the dismay and gloomy tunnel he finds himself in, is that unlike most defendants, Tomas Colon will welcome the inevitable deportation that awaits him after his period of incarceration expires. His only desire, is for his return to Maria and          as soon as possible so that he can personally bring to them whatever aid and comfort he can during whatever time is left for him to do so.

In many of the letters submitted to the Court in the Attachments, Mr. Colon's family and friends write about the respect and love that they have for him and how he has helped and affected their lives. After reading those letters, Tomas Colon has thoughtfully addressed those who love him in his letter to the Court. In his letter (Exhibit "1" ) he states:

> Your Honor I was raised and taught by my father and mother to know better, to know the difference between right and wrong. I know that because of what I did, the good thoughts that I got from my father and mother have been shamed forever.

Mr. Colon, who has obviously taken on a newfound maturity, continues on in his letter by addressing, the hurt he has caused.to others.

> Besides hurting my family, I am aware that I have also hurt so many other people because of what I have done. I would like to be able to say that it was not my fault and blame other people, but in truth I have no one to blame but myself.

Tomas Colon goes on to say how he left a fulfilling if not stressful life as the father of a severely ill infant only to actively become involved in the unlawful culture of the drug underground by buying and selling narcotics. He professes to the Court that he now wishes to leave the criminal behavior that he was involved in behind, and begin life anew with his family. He readily admits his guilt, and continues;

> I pled guilty because I am guilty. I must live with knowing that as a result of my actions so many people have been hurt. I live with the shame of what I have done and how I have caused my family to suffer. I have brought this on myself. How stupid I was. I never thought of the consequences of my actions before, and for that alone I was wrong and should be punished for the harm I did just because my friends and myself wanted to earn extra money. We sold drugs to people who hurt themselves with the drugs we sold. I only hope that God will someday forgive me. I know I must be punished for my actions. I know I have no one to blame but myself, I only wish that when I was doing bad things, I would have thought instead about the possibility of my being taken away from my family and everything else that is happening to me now.

Tomas Colon concluded his letter by stating;

> I cannot change what I have done, I can only move forward and make sure I live a
> good and honest life from here on. Your Honor, I hope you will give me as little
> jail time as possible. However, no matter what sentence you do give me, I will
> accept and know that it is the punishment I must go through because what I and I
> alone allowed myself to take part in.

# OFFENSE LEVEL CALCULATION

As stated previously, Tomas Colon pled guilty on August 4, 2023, to Conspiracy to
distribute and possess with intent to distribute, all in violation of 21 U.S.C. §§ 846, 841(b), and
8441(b)(2). This plea to an Information was in accordance with a plea agreement and waiver of
Indictment dated August 2, 2023.

As a result of his plea, and the underlying plea agreement with Government, Tomas
Colon faces a mandatory minimum sentence of five (5) years' incarceration with a Maximum
term of forty (40) years imprisonment. Based on the applicable offense level calculations arrived
at within Probation's PSE, with the defendant's Criminal History Category of I, the guideline
sentencing range would be 151 to 188 months.

As noted in the PSR, Mr. Colon pled guilty pursuant to a plea agreement and as noted
above has no objection to the contents of the PSR, nor to the guideline's calculations therein.

Once again as noted in the PSR, pursuant to the plea agreement, Mr. Colon is subject to
the mandatory statutory minimum sentence of 60 months. Although the Guidelines which were
stipulated to advise a sentence range of 151 to 188 months, the plea agreement also carved out
the ability of Mr. Colon to request a sentence less than that suggested by the Guidelines. Mr.
Colon takes this opportunity to make such request and asks the Court depart downward and
impose a sentence of sixty (60) months which is the minimum mandated by law.

# DEPARTURE FROM THE GUIDELINES

## A.  THE SECTION 3553 FACTORS AS APPLIED IN THIS CASE WARRANT A SENTENCE OF SIXTY MONTHS

As this Court is well aware, the U.S. Supreme Court ruled in *United States v. Booker*, 125
S. Ct. 738 (2005), that the statutory provisions which made up the United States Sentencing
Guidelines mandatory violated a defendant's Sixth Amendment rights and excised those sections
from the United States Code. The Court in Booker, however, did not eliminate the Guidelines.
The Guidelines are "advisory" ruled the majority in the so-called "remedy" opinion of the Court

authored by Justice Stephen Breyer. Although a district court is still required to consider the sentencing range applicable to a particular person, the Court has the authority to impose a non-guideline sentence that is "reasonable" under all of the circumstances. *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). The Guidelines are but one of several factors which a sentencing court must consider in imposing sentence. For guidance, the Supreme Court directed sentencing courts to Title 18 U.S.C. § 3443(a).

Even in the post Booker eras, the appropriate guidelines range may still be considered as "the critical starting point for the imposition of a sentence under § 3553(a*)*". *United States v. Mashek*, 406 F3d 1012, 1016 n.4 (S"" Cir. 2005). Thus, a sentencing judge is "required to consider the relevant guidelines provisions in determining a reasonable sentence". *United States v. Rubenstein*, 403 F3d 93, 98-99 (2d Cir. 2005). However, unless a sentencing judge considers all of the factors set forth in 18 U.S.C. §3553(a), as well as the applicable Guideline's range, it cannot be concluded that the resulting sentence is "reasonable". See, *States v. Crosby*, supra.

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph e." Section 3553(a)2 states that the purposes are:

> (A) To reflect the seriousness of the offence, to promote law, and to provide just punishment for the offense;
> (B) To afford adequate deterrence to criminal conduct;
> (C) To protect the public from further crimes of the defendant; and
> (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

> 1) "the nature and circumstances of the offense and history and characteristics of the defendant" [§ 3553(a)(1)];
> 2) "the kinds of sentences available" [§3553(a)(3)];
> 3) "the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct" [§ 3553(a)(6)]; and
> 4) "the need to provide restitution to any victims of the offense." [§ 3553 (a)(7)].

Other statutory provisions also give the district court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation in determining whether and to what extent imprisonment is appropriate based on Section 3553(a) factors, the court is required "to recogniz[e] that imprisonment is not appropriate means of promoting correction and rehabilitation" (emphasis added). Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of the defendant which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

8

The directives of Booker and § 3553(a) make clear that counts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based unjudicial fact finding, as well as the remedial majority in Booker, directing courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore." *United States v. Ranum*, 353 F Supp2d 984,985-6 (E.D. Wise. 2005). As one district judge has observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be unconstitutionally infirm in Booker" *United States v. Jaber F.* Supp2d, 2005 WL 605787 (D. Mass. March 16, 2005) (Gartner, X). See, also, *United States v. Ameline*, 400 F3d 646, 655-6 (9"" Cir. 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"). See also *Gall v. United States*^ 552 U.S. 38, 128 s. Ct. 586, 597 169 L. Ed. 2d 445 (2007)., (noting that one procedural error which can render a sentence unreasonable is '"treating the Guidelines as mandatory.")

## B.  ANY ADDITIONAL INCARCERATION OVER AND ABOVE THE MANDATORY MINIMUM WILL HARM INNOCENT THIRD PARTY FAMILY MEMBERS, SPECIFICALLY TOMAS COLON'S                                              COLON

As the Court is aware from the Presentence Report, the defendant who has already been incarcerated for eighteen months is the father of an infant daughter

It is submitted that from Daeneyrs birth until the date of her father's seizure in the Dominican Republic Tomas Colon was a key factor in his daughter's survival. The child's mother Maria Crespo Fernandez who lived with Mr. Colon for several years prior to his arrest has prepared an affidavit which she has requested counsel submit to the Court. By her affidavit to the Court (Exhibit"2") Ms. Crespo writes:

........

...... prior to his being arrested and extradited to the United States Tomas Cologne and I had been living together in the Dominican Republic......... we lived together as man and wife but had never married in the church. ........... We did not by any means live in luxury or any different than our neighbors who are farmers and laborers I work part time for a company that extends small loans to people who purchased household appliances and furniture. I do their bookkeeping. I also manage a veterinary supply store which Tomas and I opened in 2018 .......

We have gone from doctor to doctor and have found little to hope for. All of the doctors have told us it is a miracle that she has survived this long which I credit in great part to Tomas. He was a wonderful father and from the day of her birth did his best to try and make sure that she was able to eat at least something to get whatever nourishment she could I truly

believe that it is because of Tomas that she has survived even these few years.

(Ex.2 Affidavit of Maria Crespo Fernandez

Courts in the Second Circuit and elsewhere have taken into consideration the effects of a defendant's incarceration on innocent third parties in granting below guidelines sentences and downward departures. *United States v. Milikowsky*, 65 F.3d4, 7 (2d Cir. 1995); *United States v, Sommerstein*, 20 F.Supp.2d 454,462 (E.D.N.Y.1998). Likewise, courts in this Circuit and elsewhere have looked to a defendant's familial relationships and responsibilities in imposing below-guideline sentences and downward departures. *United States v. Khda*, 133 F.Supp.2d 345, 348 (S.D.N.Y. 2001) (A judge must sentence "without ever being indifferent to a defendant's plea for compassion, for compassion also is a component of justice.").

The Second Circuit has explained the rationale for considering family circumstances and the effect on a defendant's family when determining his or her ultimate sentence: "the rationale ... is not that [defendant circumstance's] family circumstances decrease [his] culpability, but that we are reluctant to wreak extraordinary destruction on dependents ..." *United States v. Johnson*, 964 F.2d 124,129 (2d Cir. 1992). See also *United States v. Greene*, 249 F.Supp.2d 262, 266 (S.D.N.Y. 2003) (seven level downward departure from a Guideline level of 15 to probation due to, inter alia, family circumstances: "sentencing courts must therefore focus on the vulnerability of [a defendant's] dependents, assessing the hardships that a sentence of incarceration would impose on them."). Courts grant variances when they find that family circumstances are unique, as they are herein. See, e.g., *United States v. Baker*, 502 F.3d 465, 469-70 (6th Cir. 2007); *Burgos v. US*, No. IO-CV-403 (DAB), 2010 WL 4007289 (S.D.N.Y. Oct 6, 2010).

Counsel will attempt below to alert the Court to the parameters of the infant's health status with as much restraint as can be summoned up under the circumstances. Applying such restraint however, will not be without great difficulty. As the Court will determine from viewing the photographic exhibits attached hereto, my associate, Paul Lieber, Esq. visited with Maria Crespo and her daughter in their village in the Dominican Republic. Frankly, his visit, and my review of the medical records have taken a toll on both of us. It is not for the faint of heart to review such medical records of an infant. For Mr. Lieber doing this in person was a devastating experience.

literature describes as Fanconi-Bickel Syndrome. She is lethargic, rarely smiles, has constant stomach and arthritis like pains, and is small for her age. Attached hereto as Exhibit "3" collectively are a series of photographs of Daeneyrs Colon in which her age ranges from about eighteen months to her present four years of age. As Exhibit 3's photographs portray, Daeneyrs r stomach has always seemed to be bloated, which is one of the symptoms of her affliction.

Fanconi Bickel syndrome is a rare condition characterized by the accumulation of a substance called glycogen in different parts of the body. Glycogen is created when the body

10

That Tomas Colon is and can be important to the well being and comfort of his daughter becomes all too apparent by the words of Mari Crespo as she goes on in her affidavit to the Court;

> While I worked, it was Tomas alone that cared for her, cleaned,
> bathed, fed, and made sure that she was kept occupied, Because
> of her illness, she is fragile, and it is impossible for her to play

with the other children in the village. I must tell the court that
            has rarely laughed, but the few times I have seen her
laugh were caused by Thomas playing with her. I understand
that Thomas was charged with and has pled guilty to violations
of the narcotics laws in the United States. I wish the court to
know that I do not condone such illegal activity. I have never in
my life used any sort of illegal drug and to my knowledge Tomas
never used any narcotics. No one in my family has ever been
involved with drugs or the drug business.
..........We have been told by the doctors the children with this
disease rarely live beyond 10 years of age. My husband's lawyers
have told me that Thomas must spend at least five years in prison
for what he has done. I pray and beg the court to have mercy not
only Tomas but to extend that mercy to our daughter by sending
him home as soon as possible so that hopefully he can make us
smile once again.

(Ex. 2 Affidavit of Maria Crespo Fernandez)

Your affiant's colleague, Paul Lieber Esq., who is co-counsel with me in the
representation of Mr. Colon, visited Ms. Crespo and their daughter            in the Dominican
Republic in October, 2023. The purpose of Mr. Lieber's visit was to observe and gather what
documentation he could as to            and report such back to the Court. Mr. Lieber took, and
had other people take photographs of Ms. Crespo,            their home, and the veterinary
medicine business that Mr. Colon and Ms. Crespo operate in their village. Many of those
photographs are attached hereto as Exhibit " 6 "collectively. As the photographs will attest, Mr.
Lieber found the home to be clean, well kept, but modest. It was not unlike the other houses in
the neighborhood.

Courts recognize that, where incarceration will have destructive effects on a defendant's
family, such a sentence may in fact undermine important goals of punishment, including
providing correctional treatment in the most effective manner. See, e.g., *United States v. Davis*,
No. 07-CR-727(HB), 2008 WL 2329290 at *5 (S.D.N.Y. June 5, 2008) citing 18 U.S.C. §
3553(a)(2)(D). The Davis case is instructive, as it also involved a defendant with a large family
(six children ranging in age from three to twelve years old) that depended upon him for financial
and emotional support and guidance. To be sure, there are differences between this case and
Davis - in Davis, the defendant pled guilty to possession of a sawed off shotgun, had a prior
arrest record and was poor, having previously been homeless. These seemingly different
defendants share one critical commonality: the potentially devastating effect a period of
incarceration would have on young vulnerable children.

# C.  MR. COLON'S SELF IMPOSED POST ARREST
# REHABILITAITON ALSO SUPPORTS A
# A NON-GUIDLINE SENTENCE

Since being arrested and remanded eighteen months ago, Tomas Colon has placed himself on a course to being a better person. He has since being taken into custody been a model prisoner with no disciplinary sanctions nor has he been involved in any "incidents". Further, it is suggested that as an inmate he has been an asset to the institution where he has been lodged because he has taken every opportunity to assist the correctional staff and has himself required minimal supervision.

Mr. Colon has never been adverse to hard work. As described in the PSR, Mr. Colon has since his placement in MDC been employed in the prison kitchen as a "food services crew member." As such he has been aiding in the preparation of food for the inmate and staff as well as cleanup duties. Attached hereto as Exhibit " 7 " is Mr. Colon's Prison Work Performance Rating  issued by the BOP as of November 1, 2023. Not only does the Rating recognize the defendant's work performance, history, and ethic, it establishes that he has gone far beyond that which has been required of him in order to continue his prison employment. He has been rated as "OUTSTANDING" in all areas of his endeavors and further, found to have volunteered on his days off, been respectful to correction staff and other inmates, and "responds extremely well to supervision."

Additionally, Mr. Colon has participated in several (16 at present count ) institutional educational programs while he has been incarcerated at the Metropolitan Detention Center. The programs that he has taken and completed which are offered by the Federal Bureau of Prisons range in curriculums from Business Acumen, to Bookkeeping, Budget and Financial Reports, to Commercial Driver's License Test Preparation. Attached hereto as Exhibit " 8 " collectively are sixteen certificates of completion which reflect those courses that Mr. Colon has so far completed while at MDC. The simple fact that Mr. Colon has taken and completed these self-betterment courses and has chosen to work on the institution's kitchen clean-up crew should further identify his efforts toward redemption.

(Exhibit " 8 " collectively, Certificates)

The Court is being urged to take into consideration Mr. Colon's waiver of extradition, his readiness to admit his guilty conduct by not only his plea of guilty in open court, but his willingness to be debriefed by the government and his entering into a plea agreement. It is respectfully requested that when contemplating the defendant's sentence, the Court downwardly depart from the suggested Guidelines.

In the years since Booker changed the legal landscape, other Courts have recognized post arrest rehabilitation as an important sentencing factor See *United States v. Jones*, 216 F. App. 189 (3 Cir. 2007) (departure granted for overstated criminal history prior to Booker and on remand, court imposed further reduction based on post-sentencing rehabilitation); *United States V. Shy*, 538 F.3d 933 (5th Cir. 2008) (defendant's post-offense rehabilitation, including her contributions to society through her "extraordinary work with persons with disabilities" justified three years' probation for possessing pseudoephedrine knowing it would be used to make methamphetamine, despite guideline range of 37 - 46 months); *United States v. McFarlin*, 535 F.3d 808 (8th Cir. 2008) (three years' probation imposed for conspiracy to distribute cocaine rather than 60 month guideline term, based on 54 year old defendant's extraordinary post-arrest

rehabilitation, including his installation as a preacher, and serious health problems); *United States V. Green*, 152 F.3d 1202 (9thCir. 1998) (post offense and post-sentencing rehabilitative efforts shown by exemplary conduct in prison warranted eleven level downward departure to 30 days).

Giving no weight whatsoever to the efforts that Mr. Colon has made to correct his mistakes and conduct his life going forward in full compliance with the law, would ignore the mandates of Section 3553(a). Post-offense rehabilitation, as exists in this case, has been recognized as an appropriate mitigating circumstance both before and after Booker: See *United States v. Martin*, 520 F.3d 87 (I Cir. 2008) (rejecting career offender range in a drug case, stressing, among other things, defendant's particularly striking impression as a changed man who renounced his former ways and renewed commitment to religion and family); *United States v. Bradstreet*, 207 F.3d 76 (Isi Cir. 2000) (departure at re-sentencing in securities fraud case properly based on post-offense rehabilitation); *United States v. Maier*, 975 F. 2d  944, 945 (2nd Cir. 1992) (affirming departure where defendant's "efforts toward rehabilitation followed an uneven course).

## D. THERE IS NO REASON FOR ANY DISPARITY BETWEEN THE SENTENCES OF THE DEFENDANT AND HIS CO-CONSPIRATORS

Mr. Colon has plead guilty to cover his criminal conduct in the same conspiracy as have his co-defendants.  His co-defendants who also pled guilty, did so before Mr. Colon was arrested and brought back to the United States. His coconspirators have been sentenced as follows;

| | | |
|---|---|---|
| ENVERT OVALLE ………………….. | 63 | months |
| HECTOR CABA BATISTA……….. | 48 | months |
| LUIS CABA BATISTA……………. | 53 | months |
| DORFI MONTESINO…………….. | 60 | months |
| RICHARD MARTINEZ…………… | time served | |

Annexed to the PSR is a **Judicial Sentencing Information (JSIN)**  which has the effect of suggesting a "database" for the comparison of sentences in similar matters over the last five years. It is respectfully suggested that the sentences imposed upon 18 unrelated defendants whose back grounds and circumstances are unknown would not be a proper basis for comparison when there are in existence and available to this Court, five previously sentenced codefendants that could be used as a standard. (ie…Was there violence involved in the matters that are being blindly offered? Was there any victim impact such as death, coercion or incapacity involved as there all too often is in the background of narcotics conspiracies. Were those factors taken into consideration by the sentencing Courts in those matters?

A proper perspective should take into consideration that there was no violence involved in the instant matter. Unlike many of the narcotics conspiracies prosecuted in this Court, Mr. Colon's case was barren of any indicia of violence or duress. It is unknown if any of the **JSIN** cases that have been offered for comparison involved violence, and if so, whether such was considered by the sentencing courts. Blindly using such standard when sentencing Mr. Colon

14

would skewer the result. The lack of violence being associated with the instant conspiracy cannot be downplayed, or disregarded in the course of considering what Tomas Colon's sentence should be. Guidance as to this proposition can be inferred from the "First Step" Act of 2018, and the Safety Valve Provision, 18 U.S.C. 3553 (f) both of which authorized sentencing relief to nonviolent offenders." Due to his managerial role, Mr. Colon would not qualify for either. However, in that there are no allegations of violence associated with the conspiracy that that brings Mr. Colon before the Court for sentencing, it is submitted that the spirit of the law would not be served if the standard were 18 unrelated cases wherein violence may very well have played a significant role in the sentencing Court's determinations. Using such as a standard would be unwarranted.

It is submitted that in the instant matter, fundamental fairness and adherence to the Fifth and Eighth Amendments require any comparison for the purposes of sentencing be to the sentences metered out to Mr. Colon's Co-defendants and not to a random sampling whose back ground and relevant conduct are unknown to the Court. (See Weems v. United States, 217 U.S. 349, 278 (1910) while Weems did not deal with co-defendants it did find a sentence to be disproportionate to the offense thus strengthening argument as to disparity in sentencing. See also United States v. Wiley, 278 F.2d 500 (7th Cir. 1960) which dealt with a minor's three year sentence as opposed to his co-defendant's one and two year sentences for similar conduct.

If the Court is going to gauge Mr. Colon's sentence by what was meted out to others, the standard should be the sentences which were imposed upon his co-conspirators in the instant matter and not some abstract random sampling of other cases over the last five years. His co-conspirators, as did Mr. Colon pled guilty when confronted by the same indictment. Their relevant conduct is available and comparable. In that they have already been sentenced, those sentences are the proper standard for comparison and should be substituted for those in the **JSIN** submitted by the Office of Probation.

### MR. COLON SHOULD NOT BE PUNISHED BECAUSE HE WAS LAST CONSPIRATOR TO BE ARRESTED AND AS SUCH, DID NOT HAVE THE SAME OPPORTUNITY THAT HIS CODEFENDANTS DID

In the instant matter, all of the above named co-defendants pled guilty and were sentenced prior to defendant Colon being taken into custody and extradited to the United States. Mr. Colon, who was not an absconder in any sense was not seized for extradition until 2022. The original Indictment underlying the instant prosecution 18 CR 526 was returned by the Grand Jury in 2018. By that time, the defendant Tomas Colon, had already returned to the Dominican Republic (in 2017). The defendant's daughter Daeneyrs was born April 14, 2019. Within weeks of his daughter's birth Tomas Colon was engaged on a full-time basis doing whatever he could to help nourish and otherwise help her survive.

The fact that Mr. Colon was the last to be arrested and was not taken into custody until 2022 should not militate against him. If it did, it would be tantamount to being an unwarranted enhancement of the range of sentences that had already been afforded his co-defendants. By analogy, if one were to consider the oft used suggestion of the Government to newly arrested defendants; "the boat is leaving, you don't want to miss it by not getting on board". Tomas Colon wasn't even in the United States when that boat left the dock. Per 18 U.S.C. Section 3553

(a)(6) there is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 353 (a)(6) requires that a sentencing judge consider the average actual sentence imposed in past cases involving a similar offense of conviction and expressly justify any deviation from this empirical norm. It is respectfully suggested that the defendant Colon's relevant conduct be measured against that of his codefendants in the instant indictment and that there be no great disparity between their sentences and his.

# CONCLUSION

It is humbly requested that your Honor sentence Mr. Colon to a period of sixty (60) months. Such imposition would not only satisfy societies needs, but offer some hope to Mr. Colon and his family that he would be released in time see and aid          once again, even if only briefly. Granted there is a need for a sentence to reflect just punishment and nothing that has been stated herein is meant to minimize the crimes that Mr. Colon has committed. He has by his letter to the Court, and his attempts to make amends to society, acknowledged as much. As his letter and post arrest conduct suggests, Tomas Colon has seen the error of his ways and has taken affirmative steps to rectify the criminal acts which he committed. To illustrate that he intends to stop further transgression and do the best he can to aid the Government under the circumstances, Tomas Colon has taken positive steps. His efforts beginning with his consent to being extradited, and then his proffer after being brought to the Southern District, have been unwavering and made a profound difference in the way he should be viewed and treated by the Justice system at the time of sentencing.

Tomas Colon accepted responsibility for his errant behavior immediately and continues his efforts to atone for what he has caused. He has complied with the conditions of his plea agreement and on his own taken steps that seem to have changed his behavior in a positive and constructive manner. Furthermore, as outlined above, Mr. Colon and his family have and continue to suffer due to his child's illness, which need not be expanded upon here. While a defendant's fear and recognition of what his prosecution by the Government has in store for him are the usual reasons for acceptance of responsibility, in Mr. Colon's case, it is more likely than not that it was the realization of what his actions have brought upon his daughter and Ms. Crespo that caused him to proffer and then plead guilty. For that reason alone, it is suggested that the punishment created by his incarceration for the minimum mandated sixty months will in this case be immeasurably enhanced by his knowledge of the pain he has caused those he loves.

At 48 years of age, Tomas Colon has already been in custody for eighteen months. For the reasons outlined in this letter, it is respectfully submitted that upon analysis and application of the sentencing factors enumerated in 18 U.S.C. §3553(a) a sentence of sixty (60) months would be "sufficient but not greater than necessary" to achieve the goals of sentencing listed in 18 U.S.C. §3553(a)(2).

Thus, by analogy to section 3553 and the extent to which that section commands the Court to calculate a just punishment for the instant offense, I suggest that Tomas Colon and his

family have indeed suffered incalculably due to his daughter's affliction. When that is taken into consideration, it is suggested that it would be unnecessary to imprison him for longer than that mandated by law in order to teach him a lesson. Under the circumstances, a sentence of sixty months would satisfy all of societies goals and at the same time allow the family hope that he can return to aid his daughter in any manner that he can.

Accordingly, for all the reasons set forth above, either independently or in combination, and with the supporting documents and materials, Tomas Colon requests this Court sentence him to sixty (60) months.

Counsel respectfully thanks the Court for it's consideration in this matter.

Respectfully submitted,

_____
ROBERT BLOSSNER

_____
PAUL  LIEBER

cc:     AUSA ADAM HOBSON, by ECF

17